UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

GOVERNMENT EMPLOYEES INSURANCE COMPANY, GEICO INDEMNITY COMPANY, GEICO GENERAL INSURANCE COMPANY, AND GEICO CASUALTY COMPANY

       Plaintiffs,

  -against-

LEXINGTON MEDICAL DIAGNOSTIC SERVICES, P.C. AND LN MEDICAL DIAGNOSTIC, P.C.

       Defendants.

MEMORANDUM & ORDER
18-CV-2990 (NGG) (JO)

NICHOLAS G. GARAUFIS, United States District Judge.

Plaintiffs Government Employees Insurance Company, GEICO Indemnity Company, GEICO General Insurance Company, and GEICO Casualty Company commenced this insurance action on May 21, 2018. (Compl. (Dkt. 1).) Pending before the court is Plaintiffs' motion for default judgment, which the court referred to Magistrate Judge James Orenstein for a report and recommendation ("R&R"). (*See* Mot. for Default J. (Dkt. 41); Aug. 20, 2019 Order Referring Mot.). Judge Orenstein issued the annexed R&R on February 28, 2020, recommending that the court: (1) grant the motion for default judgment, (2) award Plaintiffs declaratory relief, and (3) award Plaintiffs monetary damages in the amount of $956,308.04. (*See* R&R (Dkt. 51) at 12.)

No party has objected to Judge Orenstein's R&R, and the time to do so has passed. See Fed. R. of Civ. P. 72(b)(2). Therefore, the court reviews the R&R for clear error. *See Gesualdi v. Mack Excavation & Trailer Serv., Inc.*, No. 09-CV-2502 (KAM) (JO), 2010 WL 985294, at *1 (E.D.N.Y. Mar. 15, 2010); *La Torres v. Walker*,

1

216 F. Supp. 2d 157, 159 (S.D.N.Y. 2000). Having found none, the court ADOPTS the R&R in full.

SO ORDERED.

Dated: Brooklyn, New York
March 20, 2020

      /s/ Nicholas G. Garaufis
NICHOLAS G. GARAUFIS
United States District Judge

# REPORT AND RECOMMENDATION

James Orenstein, Magistrate Judge:

Plaintiffs Government Employees Insurance Company, GEICO Indemnity Company, GEICO General Insurance Company, and GEICO Casualty Company (collectively, "GEICO") have accused a physician and two professional corporation that he owns – Lester Nadel, M.D. ("Nadel"), Lexington Medical Diagnostic Services, P.C. ("Lexington"), and LN Medical Diagnostic, P.C. ("LN" or, collectively with Lexington, the "PCs") of engaging in a scheme to submit and prosecute fraudulent no-fault insurance claims. *See* Docket Entry ("DE") 1 (Complaint). The PCs have defaulted, *see* DE 40, and GEICO now seeks a default judgment against each. *See* DE 41.[1] Upon a referral from the Honorable Nicholas G. Garaufis, United States District Judge, and for the reasons set forth below, I now make this report and respectfully recommend that the court grant the motion for default judgment and award the plaintiffs the declaratory relief they seek as well as monetary damages in the total amount of $956,308.04.

## I. BACKGROUND

The following facts are drawn from the Complaint's unrebutted, non-conclusory factual assertions as well as the exhibits appended to that pleading. GEICO underwrites no-fault automobile insurance in New York. *See* Complaint ¶ 14. Nadel, who was licensed to practice medicine in New York in 1975, incorporated and owned the PCs. *See id*. at ¶¶ 15-17, 32, 35. The PCs were transient healthcare providers which operated out of at least twenty-four different multi-disciplinary no-fault clinics. *See id*. ¶ 36. As detailed below, the defendants engaged in a fraudulent scheme to submit no-fault insurance claims to GEICO for reimbursement that involved unlawful kick-backs made by Nadel for patient referrals,

---

[1] Nadel (whose surname the docket incorrectly renders as "Nadal") never appeared. GEICO has voluntarily dismissed its claims against him. *See* DE 49 (notice); DE 50 (dismissal order).

medically unnecessary services, misrepresentations about patients' injury severity, and the utilization of a predetermined fraudulent billing protocol. *See id*. ¶¶ 41-51.

First, Nadel made unlawful kick-back and referral fee payments to get the clinics to refer new patients to the PCs. *See id*. ¶¶ 41-42. Second, once the patients had been referred, the defendants provided them with medically unnecessary services pursuant to a predetermined protocol designed to maximize billing. *See id*. ¶¶ 48-51. They administered a wide array of diagnostic procedures to patients regardless of their individual needs. *See id*. ¶¶ 52-127. For example, the defendants inflated their profits by performing nerve conduction velocity tests on patients whose reported symptoms did not warrant any or all such measures or without properly tailoring the tests to the patients' circumstances. *See id*. ¶¶ 85-86, 94-96, 106. The defendants thus exaggerated the services they performed and routinely billed GEICO using codes that did not accurately represent those services. *See id*. Third, in submitting their claims to GEICO, the defendants misrepresented the medical necessity of the services they performed, submitted documentation that misrepresented the nature of such services, and scattered the claims under the names of each of the PCs and Nadel in an effort to avoid the detection of their scheme. *See id*. ¶¶ 128-133. The defendants' practices caused GEICO to pay $956,308.04 in no-fault benefits to the PCs and to face potential liability for at least fourteen additional pending unpaid claims. *See* DE 48 ¶¶ 10-12, 15-17 & Exs. E-F.

GEICO filed the Complaint on May 21, 2018. DE 1. In the first of the Complaint's four causes of action, GEICO seeks a declaratory judgment relieving it of liability for both PCs' pending insurance claims due to their fraudulent billing practices. *See id*. ¶¶ 172-76; 28 U.S.C. §§ 2201-02. The second claim seeks a similar declaration against Lexington only based on that company's breach of a condition precedent to coverage. *See* Complaint ¶¶ 177-81; 28 U.S.C. §§ 2201-02. In the third and fourth causes of action, GEICO seeks monetary

damages for the claims it has already paid based on theories of common law fraud and unjust enrichment, respectively. *See* Complaint ¶¶ 182-93.

An attorney initially appeared on the defendants' behalf to request a pre-motion conference in anticipation of a motion to dismiss. *See* DE 9. Before filing that motion, however, the attorney withdrew because he could not contact Nadel. *See* DE 37. The defendants have not appeared since, nor have they ever answered the Complaint or moved to dismiss it. On August 2, 2019, GEICO asked the Clerk to enter the PCs' default; he did so on August 9, 2019. *See* DE 39; DE 40. GEICO filed the instant motion for default judgment on August 20, 2019. *See* DE 41.

The court referred the motion to me by Order dated August 20, 2019. I convened an inquest on January 28, 2020, at which GEICO presented testimony but the defendants did not appear. *See* DE 47. Because GEICO had submitted a calculation of damages for claims beyond the Complaint's allegations, I afforded GEICO a final opportunity to submit supplemental materials. *See id*. On February 6, 2020, GEICO timely filed an amended declaration that purported to calculate damages accrued through the date of the Complaint. *See* DE 48 ("Weir Decl.").

## II. DISCUSSION

### A. Default

When a defendant defaults, the court must accept as true all well-pleaded allegations in the complaint, except those pertaining to the amount of damages. Fed. R. Civ. P. 8(b)(6); *see Finkel v. Romanowicz*, 577 F.3d 79, 83 n.6 (2d Cir. 2009) (citing *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992)). The fact that a complaint stands unanswered does not, however, suffice to establish liability on its claims: a default does not establish conclusory allegations, nor does it excuse any defects in the plaintiff's pleading. With respect to liability, a defendant's default does no more than concede the

complaint's factual allegations; it remains the plaintiff's burden to demonstrate that those uncontroverted allegations, without more, establish the defendant's liability on each asserted cause of action. *See*, *e.g.*, *Finkel*, 577 F.3d at 84.

If the defaulted complaint suffices to establish liability, the court must conduct an inquiry sufficient to establish damages to a "reasonable certainty." *Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999) (quoting *Transatl. Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 111 (2d Cir. 1997)). Detailed affidavits and other documentary evidence can suffice in lieu of an evidentiary hearing. *Action S.A. v. Marc Rich & Co.*, 951 F.2d 504, 508 (2d Cir. 1991); *Credit Lyonnais*, 183 F.3d at 155.

In addition to the inquest testimony of claims manager Robert Weir ("Weir"), GEICO has submitted Weir's amended declaration, with exhibits including: compilations of payment information relating to the defendants' federal tax identification numbers ("TIN Runs") that summarize the no-fault payments GEICO paid Lexington and LN, respectively through the date of the Complaint; tax forms that GEICO filed reflecting the amounts it paid to the PCs at relevant times; and database reports listing pending no-fault arbitration claims that the PCs filed against GEICO for medical services performed up through the date of the Complaint. *See* Weir Decl. Exs. A-F.[2]

### B. New York Insurance Law

New York enacted the Comprehensive Automobile Insurance Reparations Act, N.Y. Ins. Law §§ 5101-5109, to "ensure prompt compensation for losses incurred by accident victims without regard to fault or negligence [and] to reduce the burden on the courts[.]" *Med. Soc'y of State of N.Y. v. Serio*, 100 N.Y.2d 854, 860 (2003). No-fault insurers reimburse patients for up to $50,000 in personal injury benefits without proof of fault of the other

---

[2] I disregard Weir's original declaration, DE 41-1, which improperly included in its damages calculation claims the defendants submitted after GEICO filed the Complaint.

driver. Reimbursements can include all necessary expenses incurred for medical and other professional health services. *See* N.Y. Ins. Law § 5102(a)(1)(b); 11 N.Y. Comp. Code R. & Regs. ("N.Y.C.R.R.") § 65-1.1. To guarantee prompt compensation, the regulatory scheme's "30-day Rule" requires insurers to request any necessary "verification" of a claim within ten days of its receipt, and then pay or deny the claim within 30 days. *See* N.Y. Ins. Law § 5106(a); N.Y.C.R.R. § 65-3.8(a), (c).

An insured patient has the right to assign a claim for no-fault insurance benefits to her healthcare provider, who in turn may submit requests for payment directly to the insurance company. *See* 11 N.Y.C.R.R. § 65-3.11(a). New York healthcare providers submitting such claims must use a form, commonly called the NF-3, that bears the following statutorily-prescribed warning: "Any person who knowingly and with intent to defraud any insurance company … files [a] statement of claim containing any materially false information, or conceals for the purpose of misleading, information concerning any fact material thereto, commits a fraudulent insurance act, which is a crime." N.Y. Ins. Law § 403(d); *see also* 11 N.Y.C.R.R. § 65-3 App. 13. In addition, an insurer may reasonably require the insured patient (or the patient's assignee or representative) to "submit to examinations under oath by any person named by the [insurance company]" and "provide any other pertinent information that may assist the [insurer] in determining the amount due and payable." 11 N.Y.C.R.R. § 65-1.1 (b), (d).

### C. GEICO's Compliance

As noted above, New York's no-fault rules imposed strict time constraints on GEICO to verify and decide whether to pay claims for no-fault benefits. GEICO continued to rely on their internal claim procedures as required, even after it had reason to suspect the legitimacy of claims submitted by Nadel and the PCs. As a result, GEICO either timely paid claims submitted by the defendants, timely and appropriately denied such claims, or timely issued

5

requests for additional verification with respect to all pending claims submitted by the defendants. *See* Complaint ¶¶ 135-36.

Beginning on March 21, 2016, GEICO made multiple formal requests for the examination under oath of defendant Lexington. These requests were timely and based upon the application of the objective standards justifying the examinations under oath sought. Lexington failed to appear for any of the scheduled examinations under oath. *See id*. ¶¶ 151-54. As a result, GEICO contends that Lexington breached a condition precedent to coverage and that GEICO is therefore not responsible for the payment of those claims for which examinations under oath were sought and Lexington failed to appear. *See id*. ¶ 156.

The PCs submitted claims including material misrepresentations in an effort to induce GEICO to make payments to which they were not entitled. Under all of the circumstances, and in particular in light of the 30-day Rule, GEICO acted reasonably in relying on those misrepresentations to make payments. When GEICO investigated the claims by collecting and reviewing the relevant records, interviewing insured patients, and inspecting the clinics, it concluded that the PCs had defrauded it and filed the instant Complaint. *See id*. ¶¶ 137-39.

**D. Liability**

1. Declaratory Judgment

GEICO seeks a declaratory judgment that the PCs have no right to receive payments for their outstanding bills to GEICO for medical services because the PCs acted fraudulently in submitting them. *See* Complaint ¶¶ 173-75; Weir Decl. ¶¶ 13-17; 28 U.S.C. §§ 2201-2202. To state a claim for declaratory judgment, a plaintiff must allege that there is a substantial controversy between parties with adverse legal interests that is of sufficient immediacy and reality to warrant the issuance of a declaratory judgment. *See Niagara Mohawk Power Corp. v. Tonawanda Band of Seneca Indians*, 94 F. 3d 747, 752 (2d Cir. 1996) (quotations

omitted). "A court may consider whether to enter a declaratory judgment only if the action presents an actual case or controversy that is 'real and immediate, allowing specific and conclusive relief,' and 'ripe for adjudication.'" *Gov't Emps. Ins. Co, v. Spectrum Neurology Grp.*, 2016 WL 11395017, at *4 (E.D.N.Y. Feb. 17, 2016) (quoting *U.S. Underwriters Ins. Co. v. Kum Gang, Inc.*, 443 F. Supp. 2d 348, 352 (E.D.N.Y. 2006)).

"Declaratory relief is appropriate '(1) where the judgment will serve a useful purpose in clarifying and settling the legal relations in issue; or (2) when it will terminate and afford relief from the uncertainty, insecurity and controversy giving rise to the proceedings.'" *Gov't Ins. Emps. Co. v. Gateva*, 2014 WL 1330846, at *5 (E.D.N.Y. Mar. 20, 2014) (quoting *Md. Cas. Co. v. Rosen*, 445 F.2d 1012, 1014 (2d Cir. 1971)); *see also* 28 U.S.C. § 2201. "In deciding whether to award declaratory relief, a federal court applies the state substantive law of the forum in which it sits." *State Farm Mut. Auto Ins. Co. v. Cohan*, 2009 WL 10449036, at *4 (E.D.N.Y. Dec. 30, 2009). Under New York law, an assertion of defenses against payment of a no-fault insurance claim or bill must affirmatively plead compliance with the applicable mandatory time limit for responding to insurance claims. *See Hosp. for Joint Diseases v. Travelers Prop. Cas. Ins. Co.*, 9 N.Y.3d 312, 317-18 (2007) ("a carrier that fails to deny a claim within the 30-day period is generally precluded from asserting a defense against payment of the claim") (citations omitted). An insurer can, by establishing that it maintains and follows standard internal procedures for the timely mailing of responses to no-fault claims, create a rebuttable presumption that the responses were mailed within the time limit imposed by statute. *See, e.g., N.Y. & Presbyterian Hosp. v. Allstate Ins. Co.*, 814 N.Y.S.2d 687, 688 (App. Div. 2006); *Lenox Hill Hosp. v. Allstate Ins. Co.*, 930 N.Y.S.2d 175 (table), 2011 WL 1710396 at *3 (N.Y. Dist. Ct. 2011), *aff'd*, 966 N.Y.S.2d 347 (App. Term 2012). Courts in this district have found it appropriate to enter declaratory judgments where fraudulently incorporated medical services corporations have claims

pending against an insurance company for payment of no-fault benefits. *Gov't Emps. Ins. Co. v. Jacques,* 2017 WL 9487191, at *9 (E.D.N.Y. Feb. 13, 2017) (citing cases).

GEICO asserts that it is entitled to declaratory relief because the defendants' scheme has generated at least fourteen currently pending fraudulent insurance claims, in addition to those it has already paid, in which healthcare services were provided prior to the date of the Complaint. With respect to each such pending claim, GEICO has established either that it has timely denied payment, that it has requested additional verification with no response from defendants, or that the time to respond the claim has not elapsed. *See* Complaint ¶ 136; Weir Decl. Exs. E-F. The pendency of these claims, and GEICO's demonstrated compliance with its obligations under New York's no-fault insurance law, is a sufficient predicate for declaratory relief. *See, e.g., Perfect Dental, PLLC v. Allstate Ins. Co.*, 538 F. Supp. 2d 543, 549 (E.D.N.Y. 2007) (granting declaratory judgment related to unpaid claims); 11 N.Y.C.R.R. § 65-3.8. I therefore conclude that GEICO is entitled to declaratory judgment on the first cause of action against each of the PCs.

I reach a similar conclusion as to the second claim for declaratory relief that GEICO asserts against Lexington alone. GEICO contends that it is entitled to a declaration nullifying any claims Lexington submitted as to which Lexington failed to appear for an examination under oath upon request. *See* Complaint ¶¶ 177-181. GEICO repeatedly made formal and proper requests for such examinations that Lexington failed to honor. *See id*. ¶¶ 151-155. Under New York law, the appearance of a patient or the patient's assignee for a reasonably requested examination is a condition precedent to an insurer's liability on the patient's policy. *See Stephen Fogel Psychological, P.C. v. Progressive Cas. Ins. Co.*, 827 N.Y.S.2d 217, 219-20. (App. Div. 2006); *see also Rosenthal v. Prudential Property & Cas. Co.*, 928 F.2d 493, 494 (2d. Cir. 1991) (affirming that failure to submit to an examination under oath constituted a material breach under fire insurance policy). Lexington's failure to appear for

the requested examinations thus provides an independent basis for granting GEICO the declaratory relief it seeks as to that PC's pending unpaid claims, and I therefore respectfully recommend that the court find Lexington liable on the Complaint's second claim.

    2.    Common Law Fraud

To establish its common law fraud claim, GEICO must establish that each of the PCs made a material misrepresentation of fact with knowledge of its falsity and that GEICO reasonably relied on it and suffered damages as a result. *See Gov't Emps. Ins. Co v. Infinity Health Prods., Ltd.*, 2012 WL 1427796, at *5 (E.D.N.Y. Apr. 6, 2012) (citing *Schlaifer Nance & Co. v. Estate of Warhol*, 119 F.3d 91, 98 (2d Cir. 1997)); *see also Lama Holding Co. v. Smith Barney, Inc.*, 88 N.Y.2d 413, 421 (1996). In addition, to satisfy its obligation to plead fraud with particularity, *see* Fed. R. Civ. P. 9(b), GEICO's Complaint must, as to each of the PCs, specify the fraudulent statements at issue, identify the speakers, state where and when the statements were made, and explain why the statements were fraudulent. *See Gov't Emps. Ins. Co. v. Parkway Medical Care, P.C.*, 2017 WL 1133282, at *7 (E.D.N.Y. Feb. 21, 2017) (citations omitted). The complaint need only generally aver a defendant's knowledge of a misrepresentation or omission and intent to defraud, but it "must allege enough facts to give rise to a strong inference that the defendants had the requisite intent to defraud." *Id.* (citation omitted). Such an inference may be shown either by alleging facts "to show that defendants had both motive and opportunity to commit fraud," or by alleging facts "that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *Id.* (quoting *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994)).

The Complaint easily meets that standard, and the PCs' default establishes the truth of its allegations. GEICO has provided a detailed showing that each of the PCs misrepresented the complexity and comprehensiveness of the examinations and tests allegedly performed, that they were medically necessary, that they were provided, and that

9

they were accurately coded. *See, generally*, Complaint at ¶¶ 44-127. These categories of misrepresentations have also been found to constitute fraud in other similar cases. *See Gov't Emps. Ins. Co. v. Ajudua*, 2018 WL 7252961, at *5 (E.D.N.Y. Dec. 18, 2018); *Gateva*, 2014 WL 1330846, at *6; *Jacques*, 2017 WL 9487191, at *7.

The Complaint's unrebutted assertions also establish that the defendants knew their submissions to be false. GEICO provides a detailed description of the defendants' fraudulent scheme, citing specific misrepresentations about the proper billing codes for and necessity of certain procedures that the defendants could not have made without knowledge of their falsity. GEICO also specifically alleges (and the PCs' default establishes) that the defendants "scattered the services [billed] among several professional corporations or under Defendant Dr. Nadel's name in order to avoid detection." Complaint ¶ 133.

GEICO further alleges that the claims submitted by the corporate defendants were falsely verified and that the defendants acted to conceal their fraud. GEICO was under an obligation to process the claims within 30 days. Insurers can justifiably rely on claims forms submitted under New York no-fault laws. *See AIU Ins. Co. v. Olmecs Med. Supply, Inc.*, 2005 WL 3710370, at *14 (E.D.N.Y. Feb. 22, 2005) (reliance on facially valid no-fault claims sufficiently states reliance element for a cause of action in common law fraud). That suffices to show GEICO's justifiable reliance on the PCs' misrepresentations. I therefore conclude that GEICO is entitled to judgment on its fraud claim against each of the PCs. *See Gov't Emps. Ins. Co. v. IAV Med. Supply, Inc.*, 2013 WL 764735, at *4-6 (E.D.N.Y. Feb. 8, 2013) (report and recommendation), *adopted*, 2013 WL 765190 (E.D.N.Y. Feb. 28, 2013).

   3.  Unjust Enrichment

To prevail on its unjust enrichment claims, GEICO must establish that the PCs benefitted at its expense and that "equity and good conscience require restitution." *Kaye v. Grossman*, 202 F.3d 611, 616 (2d Cir. 2000) (quotation omitted); *see also Ajudua.*, 2018 WL

7252961, at *5. The "essence" of the claim "is that one party has received money or a benefit at the expense of another." *Kaye*, 202 F.3d at 616 (quotation omitted). GEICO adequately alleges that the PCs benefitted when they received payment from GEICO by fraudulently submitting claims for which they were ineligible. I therefore conclude that GEICO is entitled to judgment on its unjust enrichment claims against each of the PCs. *See, e.g.*, *IAV Medical Supply, Inc.*, 2013 WL 764735, at *7; *State Farm Mut. Auto. Ins. Co. v. Rabiner*, 749 F. Supp. 2d 94, 102-03 (E.D.N.Y. 2010); *Gov't Emps. Ins. Co. v. Damien*, 2011 WL 5976071, at *5 (E.D.N.Y. Nov. 3, 2011).

### E. Damages

Having established defendants' liability for fraud and unjust enrichment, GEICO must next establish its damages with "reasonable certainty." *Credit Lyonnais*, 183 F.3d at 155. GEICO contends that it is entitled to a total of $956,308.04, consisting of $387,494.58 paid to Lexington and $568,813.46 paid to LN. *See* Weir Decl. ¶ 10 & Exs. A-B. Weir calculated these sums based on the TIN Runs that GEICO uses to isolate each individual insurance claim it receives from any entity associated with a given taxpayer identification number. These reports list each individual payment for each allegedly fraudulent claim that the PCs submitted. *See id*. Based on this evidence, I conclude that GEICO has established its damages to a reasonably certain degree, and therefore recommend that the court award damages in the total amount of $956,308.04.

## III. RECOMMENDATION

For the reasons set forth above, I respectfully recommend that the court grant the motion for default judgment and award the plaintiffs the declaratory relief they seek as well as monetary damages in the total amount of $956,308.04.

## IV. OBJECTIONS

I respectfully direct the plaintiffs to promptly serve a copy of this Report and Recommendation on each defendant by certified mail, and to file proof of service by March 4, 2020. Any objections to this Report and Recommendation are due by March 13, 2020. Failure to file objections within this period designating the particular issues to be reviewed waives the right to appeal the district court's order. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); *Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C.*, 596 F.3d 84, 92 (2d Cir. 2010).

SO ORDERED.

Dated: Brooklyn, New York
February 28, 2020

                                                                           /s/
James Orenstein
U.S. Magistrate Judge